UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE JONES, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>v.<br><br>TONAL SYSTEMS, INC., and DOES 1-100, inclusive,<br><br>           Defendants. | Case No.: 3:23-cv-1267-JES-BGS<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR JURISDICTIONAL DISCOVERY** |

## I. BACKGROUND

Before the Court is Plaintiff Julie Jones' motion to remand to state court her class action against Defendants Tonal Systems, Inc. ("Tonal") and John Does 1-100 pursuant to the mandatory home-state controversy exception of the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(4)(B). Tonal is a California-headquartered manufacturer of internet-enabled home fitness equipment. Complaint, ECF No. 1-2 ¶ 4. Jones' Complaint, filed originally in the Superior Court of California, accuses Tonal of "allow[ing] Third Parties to "wiretap and eavesdrop on the chat conversations of all its

website visitors" in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630-638; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.; and the California Constitution's right to privacy provision, Cal. Const. art. I, § 1. Compl. ¶ 13. Defendants removed the action to this Court, and Plaintiffs timely filed the instant motion to remand it. For the foregoing reasons, the motion is **DENIED**.

## II. PLAINTIFF'S BURDEN UNDER THE MANDATORY HOME STATE CONTROVERSY EXCEPTION TO CAFA

CAFA vests federal district courts with original jurisdiction over class actions of 100 or more members with minimal diversity and an aggregate amount in controversy exceeding $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5). CAFA contains two mandatory exceptions under which district courts "shall decline to exercise jurisdiction"—the "local controversy" exception and the "home-state controversy" exception. 28 U.S.C. § 1332(d)(4). The parties agree that only the latter is in dispute. ECF No. 19 at 1, fn. 1; ECF No. 20 at 2, fn. 1. Under the home-state controversy exception, federal district courts must decline jurisdiction over actions with 100 or more members and more than $5,000,000 in controversy when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). It is not contested that Tonal is a citizen of California, where Plaintiff filed her case, and the Plaintiff does not dispute that the prospective damage amount underlying defendant's removal notice surpasses $5,000,000. The questions on this motion, then, are (1) whether Plaintiff has cleared her evidentiary burden to show that two thirds of the plaintiff class are California citizens and (2) whether jurisdictional discovery should be permitted to establish the same.

In this Circuit, the party seeking remand (nearly always the plaintiff) bears the burden of establishing that the home-state controversy applies and requires remand. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). Plaintiffs must

demonstrate by a preponderance of the evidence that the Defendants and at least two thirds of proposed class members in aggregate are California citizens. The burden on the Plaintiff "should not be exceptionally difficult to bear." *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 886. However, "there must ordinarily be facts in evidence to support" findings related to class citizenship. *Id.*, 881-882.

A natural person's state citizenship is determined by her state of domicile. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residency and citizenship are thus not the same thing. "[A] residential address in California does not guarantee that the person's legal domicile was in California." *King v. Great American Chicken Corp., Inc.*, 903 F. 3d 875, 879 (9th Cir. 2018). Further, *Mondragon* declined to address or adopt a presumption that residential information constitutes prima facie evidence of domicile. *Mondragon* at 885-886. It said only that district courts are to "consider 'the entire record' to determine whether evidence of residency can properly establish citizenship." *Id.* at 879.

Absent a factual stipulation that the two-thirds requirement has been met, such a finding can at least in theory be made from the class definition alone. "A pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question, but otherwise such a finding should not be based on guesswork." *Mondragon* at 881-882 (9th Cir. 2013). The Ninth Circuit has construed "guesswork" broadly in this context, and acknowledged that Plaintiff's burden may "require evidentiary proof of propositions that appear likely on their face." *Id.* at 884. In *Mondragon*, the Court explicitly found it "likely that most of the prospective class members—we would guess more than two-thirds of them—were California citizens at the time the lawsuit was filed," and then vacated the district court's remand order. *Id.* Five years later in *King*, the Ninth Circuit again vacated a remand order where the defendant had already stipulated that "at least 67%" of the employees making up the putative class had last known residential addresses in California. 903 F. 3d 875,

876. The Court reasoned that the defendant's stipulation left too narrow of a "cushion" between the § 1332(d)(4) exception's two-thirds requirement and the possibility that putative class members' residential addresses would not indicate California citizenship—whether because class members had moved, were not U.S. citizens, or held California addresses on a temporary basis. *Id.* at 879.

In support of her remand motion, the Plaintiff points to the class definition and "common sense," as well as the Court's ability to make "reasonable inferences from facts in evidence." ECF No. 20 at 2, citing *Mondragon*. Plaintiffs have defined the class as:

> All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on the Website, and (2) whose communications were recorded and/or eavesdropped upon in real time by Drift or any other third party without prior consent. Compl. ¶ 32 (ECF No. 1-2).

The class definition is thus not limited to California citizens. Instead, Plaintiff infers that because Tonal makes *"home fitness"* equipment (emphasis original), more than two thirds of people accessing the Defendant's customer service chat feature while in California also reside and are domiciled there. After all, if the class members (or at least two thirds of them) did not have permanent homes in California, then they would not have purchased expensive home fitness equipment. ECF No. 9 at 5; ECF No. 20 at 2-3.

Plaintiff makes a sensible inference, but the factual contents of her Complaint and motion to remand are less extensive than what Ninth Circuit precedents require for her to meet her burden under the home-state controversy exception. Finding that the home state exception's two thirds requirement has been met in this case would amount to "guesswork" as the case law has defined it.

### III. REQUEST FOR JURISDICTIONAL DISCOVERY

In the event she does not carry her jurisdictional burden, Plaintiff alternately requests 60 days of "limited jurisdictional discovery" for the purpose of establishing citizenship of more than two-thirds of class members. ECF No. 9-1 at 6-8. The Ninth Circuit has previously said that "any decision regarding jurisdictional discovery is a

discretionary one, and is governed by existing principles regarding post-removal jurisdictional discovery, including the disinclination to entertain 'substantial, burdensome discovery on jurisdictional issues.'" *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 692 (9th Cir. 2006) (citing S. Rep. No. 109-14 at 44). "In granting discovery, the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). The Court's discretion is further guided by a contemporaneous report of the Senate Judiciary Committee on the interpretation of CAFA:

> [T]he Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions. S. Rep. No. 109-14 at 44.[1]

Plaintiff's motion to remand and subsequent briefing is somewhat vague as to what jurisdictional discovery she seeks. Her motion and Complaint allege that Defendant "possesses 'Drift Intel' about each visitor of the Website who used the chat feature." ECF No. 9-1 at 7; *c.f.* Compl. ¶ 19. Plaintiff alleges that the Drift Intel "includes the visitor's IP address and Salesforce record details." *Id.* These Salesforce record details, Plaintiff

---

[1] The Defendants cite the same Senate Report's admonishment that:

> in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified.

ECF 19 at 5-6, 16. The Court notes that producing such a list is a less "massive, burdensome undertaking" today than when the Senate Report was issued in 2005, or when the *Abrego Abrego* decision was issued in 2006. The Court's holding today is not based on an aversion to producing lists, but on the indications that the indexes in the Defendant's possession are unlikely to yield jurisdictionally relevant information. *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("The denial of [plaintiff-appellant's] request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion.")

states, "will often include physical addresses associated with the visitor." *Id.* Her reply brief states that determining residency and location information of Drift chat users "may be accomplished by an aggregated list of residential addresses and IP addresses in Tonal's records with respect to website visitors who used the chat feature on the [Drift] website during the class period." ECF No. 20 at 4. At oral argument on this motion, Plaintiff's counsel further elaborated that jurisdictional discovery would include up to ten interrogatories to Tonal, likely followed by third party subpoenas to Drift. The latter would invite further motions.

Tonal, for its part, has provided a Declaration from its Director of Care, Sales, and Marketing Systems stating essentially that mailing address information of its customers and IP address information of Drift chat users are kept in separate places, and that the latter is not in the custody of Tonal. ECF No. 19-3, Ex. D at 1. ("As used by Tonal, there is no input field in the Drift software platform for values associated with chat users' mailing or residential addresses.") Tonal further adds that "As a matter of course, Tonal does not collect mailing or residential addresses in Drift or Tonal's consumer databases based on chat interactions." *Id.*

Plaintiff's argument, impliedly, is a problem of aggregation and set logic. It is a bet that the intersection of three lists—a list of all Tonal customers receiving deliveries of their Tonal equipment in California, a second list of all Tonal customers using the Drift chat feature, and a third list of all IP addresses used by customers while accessing the Drift chat feature—would yield a set of potential class members about whom this Court could apply a preponderance of evidence standard to establish whether two thirds are California citizens. This hypothetical set of Tonal customers who (1) have California mailing addresses and (2) used the Drift chat feature and (3) did so with an IP address suggesting that they accessed the site while in California does not amount to the required jurisdictional showing. Instead, it would still invite the Court to speculate (or "guess") both on the reliability of IP addresses to establish the physical location of a Tonal/Drift

user[2] and on the domiciliary status of Tonal customers with California addresses. If the best version of jurisdictional discovery would not advance Plaintiff's required showing under § 1332(d)(4), and simultaneously would at least begin to resemble the sort of burdensome undertaking disfavored by the CAFA statute and accompanying Senate Report, then the Court can safely in its discretion deny the request.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the Plaintiff's motion to remand and request for jurisdictional discovery (ECF No. 9).

**IT IS SO ORDERED**.

Dated: January 31, 2024

Honorable James E. Simmons Jr.
United States District Judge

---

[2] The Court does not adopt Defendant's framing that IP addresses are a per se unreliable indicator of an internet user's physical location.