1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE JONES, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>TONAL SYSTEMS, INC., and DOES 1-100, inclusive,<br><br>                                    Defendants. | Case No.:  3:23-cv-1267-JES-BGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 14]** |

Before the Court is Defendant Tonal Systems, Inc.'s ("Defendant" or "Tonal") motion to dismiss Julie Jones' ("Plaintiff") complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 14-1. The motion is fully briefed and has been subject to oral argument. For the reasons stated below, the motion is **GRANTED**.

## I.     FACTUAL ALLEGATIONS

Defendant is a California-headquartered manufacturer of internet-enabled home fitness equipment. ECF No. 1-2, Compl. ¶ 4. Defendant maintains a customer support chat

feature on its website, the mechanics of which are the subject of this dispute.[1] The Plaintiff is a California citizen who along with class members visited Tonal's website and "engaged with the 'chat' feature of the Website to communicate with Defendant." *Id*. at ¶ 25.

Defendant's website chat feature includes an Application Programming Interface ("API") run by a third-party vendor called Drift. *Id*. at ¶¶ 15-16. Drift API is a piece of computer code that creates and stores transcripts of conversations that take place between website visitors and Tonal agents in the chat feature. *Id*. at ¶ 15.

According to the Complaint,[2] although "consumers interact with the chat service on Defendant's Website, [such that] it appears they are only communicating with a company representative of Defendant[,]" Plaintiff and Class Members' messages to Tonal are "first routed through Drift's server." *Id*. at ¶¶ 16-17. Drift thereby gains the ability to "secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use [chat feature conversations] for [its] own purposes." *Id*. at ¶ 15. *See also* Compl. ¶ 17 ("This enables Drift to analyze, interpret, and collect customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services.").

Plaintiff repeatedly references the prospect that Drift can use Tonal's chat feature transcripts for "its own business purposes." *Id*. at ¶¶ 18, 23. She infers these uses and purposes from Drift's Product Guide for its Live Chat software ("the Product Guide").[3] Plaintiff quotes a statement from the Product Guide that chats are not deleted and are organized by the third-party vendor: "Drift does not allow conversations to be deleted. This is because Drift doesn't want to lose any activity with your contacts and/or leads. Instead of deleting conversations, Drift utilizes Conversation Statuses to help organize your chats." *Id*. at ¶ 18. Plaintiff also says Drift uses cookies "to record a Website visitor's activity during and after the visitor's chat sessions with Defendant" and to link Tonal chat

---

[1] The Defendant's website is https://www.Tonal.com/.

[2] On a motion to dismiss for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

[3] The Live Chat Quick Reference Guide is attached to the Defendant's motion and incorporated into the Complaint by reference. *See* Ex. A, ECF No. 14-3.

transcripts if the user is a repeat visitor to the website. *Id*. at ¶ 20. Apart from keeping chat transcripts and site activity, Plaintiff alleges that Drift analyzes chat feature conversations to determine Class Members' likelihood of purchasing Tonal's products and services. *Id*. at ¶ 19. By combining chat transcripts and chat metadata with Salesforce record details, the site user's recently visited webpages and activity during his or her website visit; and the visitor's IP address, browser, and device information, Drift can label and tag web visitor conversations according to the user's potential interest in Tonal products. *Id*.

Plaintiff alleges the above has occurred without her knowledge or consent. *Id*. at ¶¶ 16, 18, 27-30, 49, 55. By paying for and using Drift's services, she says, Tonal has intentionally caused the illegal interception and eavesdropping of her communications. *Id*. at ¶¶ 45-46. Plaintiff accordingly brings claims for violations of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 630-638; California's Unfair Competition Law ("UCL"), California Business & Profession Code § 17200, et seq.; and the California Constitution's right to privacy provision, Cal. Const. art. I, § 1. *Id*. at ¶ 13.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 12(b)(6) is read in conjunction with Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The Court need not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. The Complaint "must contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Dismissal is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 2008). The question is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007). "Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . ." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

## III.   REQUESTS FOR JUDICIAL NOTICE AND NOTICES OF RECENT DECISIONS

### A. Defendant's Request for Judicial Notice of its Website and Privacy Policy

Two doctrines allow the Court to consider matters outside the pleadings without converting a defendant's motion under Rule 12(b)(6) into a motion for summary judgment. Under incorporation by reference, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Second, the doctrine of judicial notice allows the Court to consider as part of the record adjudicative facts when they are "not subject to reasonable dispute," either because the fact is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b). "[A]s a general matter, websites and their contents may be proper subjects for judicial notice." *Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at \*4 (N.D. Cal. Mar. 13, 2006); *see also Loomis v. Slendertone Distribution, Inc.*, 420 F.Supp.3d 1046, 1062 (S.D. Cal. 2019) (granting Defendant's unopposed request for judicial notice of a printout from the Food and Drug Administration's publicly available website).

Defendant has requested the Court consider as incorporated by reference and take judicial notice of four exhibits. ECF No. 15. These are, respectively, the Drift Live Chat Product Guide as accessed on August 28, 2023 (Ex. A), a copy of Tonal's chat box and accompanying disclosure (Ex. B), a copy of Tonal's website homepage (Ex. C), and a copy of the Defendant's Privacy Policy in effect from March 17, 2021, to June 22, 2023 (Ex. D). All four exhibits are printouts of publicly available webpages. Plaintiff has not opposed Tonal's judicial notice request as to these exhibits or contested the authenticity of the pages. Plaintiff's Complaint quotes from Tonal's Live Chat Product Guide and her characterizations of the website chat feature "form the basis" of her lawsuit. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Accordingly, the Court **GRANTS** Defendant's Request for Judicial Notice of Exhibits A-D of the instant motion and considers these Exhibits in the motion.

**B. Notices of Recent Judicial Decisions**

Defendant also requests the Court take judicial notice of five other complaints filed by Plaintiff in this district. ECF No. 15 at 2. Separately, each party has filed multiple separate notices of recent decisions relating to this motion, each containing an opinion from within this district on a CIPA defendant's Rule 12(b)(6) motion. ECF Nos. 28-32. These requests are **DENIED** as moot. The Court need not take judicial notice of a legal opinion or proceeding in order to consider it.

/ / /

/ / /

# IV.   LEGAL ANALYSIS

## A. California Invasion of Privacy Act Section 631(a) Claims

Plaintiff's first cause of action arises under Section 631(a) of CIPA. Cal. Penal Code §§ 630-638. Section 631(a) prohibits three classes of activity as well as aiding and abetting thereof. The section penalizes:

> "Any person who, by means of any machine, instrument, or contrivance, or in any other manner,
>
> [1] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> [2] or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state;
>
> [3] or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> [4] or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

Cal. Penal Code § 631(a) [subdivisions added for ease of reference].

Plaintiff's first CIPA claim falls under the second, third, and fourth prongs of section 631(a). These prongs respectively prohibit interception. These prongs have also regularly been interpreted to cover internet communications. *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) ("[T]he Court finds no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first prong of the statute should be imported to the second prong of the statute.") Notably, Plaintiff does not seek to invoke liability under the first prong, nor has

she filed a cause of action against Drift, only Tonal and Doe Defendants. Plaintiff only invokes the fourth prong under section 631 against Tonal to allege that Tonal aided and abetted Drift to eavesdrop. Therefore, the Court needs to address whether Drift has violated the second or third prong in order to invoke liability against Tonal under the fourth prong.

### 1. Second Prong – Eavesdropping

The second prong of section 631(a) provides that it is punishable by fine or imprisonment for "any person … who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a).

Defendant makes three arguments that its alleged conduct does not create CIPA liability: (1) CIPA's party exemption applies as Drift's software is merely a tool that Tonal uses to communicate with visitors to Tonal's website; (2) there is no adequate allegation of interception; and (3) Plaintiff does not allege that she entered "contents" of communications in the chat feature. ECF No. 14-1 at 13-14.

### a. Applicability of CIPA's Party Exemption

Tonal first argues that its alleged conduct is exempt from liability via CIPA's party exemption. ECF No. 14-1 at 6-9. There are two seminal cases that frame the analysis of section 631 liability, *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975) and *Ribas v. Clark*, 38 Cal. 3d 355 (1985).

In *Rogers*, Ulrich used a tape recorder jack installed in his telephone to record a conversation with Rogers, without Rogers' knowledge, and then played the conversation for a third party. *Rogers*, 52 Cal. App. 3d at 897-98. Relying on the legislative finding that the law is intended to prevent "eavesdropping," the appellate court held that a party to a conversation cannot "eavesdrop" under the law: "It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can

listen secretly to a private conversation." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 898 (N.D. Cal. 2023) (citation and quotation marks omitted).

In *Ribas*, during a dispute over a divorce settlement, Ribas' wife asked her friend, Clark, to secretly listen in via an extension to a conversation with her former husband, about a prior conversation Ribas had with the wife's attorney. *Ribas*, 38 Cal. 3d at 358. The California Supreme Court held that the act was eavesdropping under the statute, because the statute differentiates between "the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor." *Id*. at 360-61. "[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id*. at 361.

Thus, as the Court in *Javier* noted, the question for purposes of determining whether Drift was a party to the communications is whether Drift "is more akin to the tape recorder in *Rogers* … or [to] the friend in *Ribas*." *Javier*, 649 F.Supp.3d at 898. "Despite widespread agreement among courts in this Circuit as to the nature of [this] inquiry, courts have split on how the party exception applies in the context of third-party software, as well as how stringently pleading standards should be applied." *Rodriguez v. Ford Motor Company*, No. 3:23-cv-00598-RBM-JLB, 2024 WL 1223485, at *10 (S.D. Cal. Mar. 21, 2024) (internal citations and quotations omitted).

In the first line of cases, courts have held that software providers are third parties within the meaning of section 631. The Ninth Circuit in *In re Facebook, Inc., Internet Tracking Litig.*, held that Facebook was not a party to communications between a user's browser and a third-party website. 956 F.3d 589, 607-08 (9th Cir. 2020). On websites with Facebook plugins, Facebook's code copied a header containing a user's personally identifiable URL information that was transmitted from the user's web browser to the website that enabled Facebook to compile users' browsing histories for its own purposes. *Id*.; *see also Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. May 22, 2019) ("NaviStone 'acted as a third party' because 'the code

embedded into the Moosejaw.com pages functioned as a wiretap that redirected [Revitch's] communications to NaviStone while he browsed the site."); *see also Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 521 (C.D. Cal. 2021) ("Here, as in *Revitch*, FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike.").

In the second line of cases, led by *Graham v. Noom, Inc.*, courts have held that software providers are "extension[s]" of the websites that employ them that "provide[] a tool" allowing a company "to record and analyze its own data in aid of [its] business." 533 F.Supp.3d 823, 832 (N.D. Cal. 2021). In *Graham*, FullStory provided a "software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data." *Id*. The court likened this software to the tape recorder in *Rogers* and held that the software did not constitute eavesdropping because the plaintiffs had not alleged that FullStory "intercepted and used the data itself." *Id*.; *see also Cody v. Boscov's, Inc.*, 658 F.Supp.3d 779, 782 (C.D. Cal. 2023) ("[the] [p]laintiff must provide facts suggesting that [the software companies] are recording [the] [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [the] [d]efendant."); *see also Byars v. Hot Topic, Inc.*, 656 F.Supp.3d 1051, 1066-68 (C.D. Cal. 2023) ("As in *Graham* … Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant]'s business,' not the 'aggregation of data for resale,' which make the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper.'").

The court in *Javier*, held that there are two problems with the reading of section 631 in *Graham*. *Javier*, 649 F.Supp.3d at 900. First, the reading "interprets the second prong of the statute … based on the intentions and usage of the prospective third party." *Id*. (quoting Cal. Penal Code § 631(a)). "But the third prong of the statute already penalizes 'use' … [of] any information so obtained." *Id*. (quoting same). Thus, "reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id*. Second, the California Supreme Court in *Ribas*

did not consider Clark's intentions or the use of the obtained information, but rather "emphasized the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call," which implicates an individual's "right to control the nature and extent of the firsthand dissemination of [their] statements." *Id.*

*Javier* mentioned two other grounds upon which to conclude that a software company is not an "unannounced second auditor" of a communication: "(1) If [the software company] does not have the capability to use its record of the interaction for any other purpose …; or (2) the ubiquity of services like [the software company] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the website]." *Id.*

The Court finds the reasoning articulated in *Javier* persuasive. Thus, applying *Javier*, the question now is whether Plaintiff has adequately alleged that Drift has the capability to use the chat data for its own purposes or benefit. *See Balletto v. Am. Honda Motor Co.*, No. 23-cv-01017-JSW, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023); *see also Rodriguez*, 2024 WL 1223485, at *11-12.

Here, Plaintiff alleges "whenever a chat message is sent from a member of the Class to Defendant, it is first routed through Drift's server. This enables Drift to analyze, interpret, and collect customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services." Compl. ¶ 17. Plaintiff then alleges that "Drift boasts that it harvests data from the chat transcripts it intercepts, eavesdrops upon, interprets, analyzes, stores, and uses for a variety of its own purposes— all without Plaintiff's or class members' consent—saying, 'In short, Drift does not allow conversations to be deleted. This is because Drift doesn't want to lose any activity with your contacts and/or leads. Instead of deleting conversations, Drift utilizes Conversation Statuses to help organize your chats.'" *Id.* at ¶ 18. Plaintiff then alleges that:

> "Drift claims that it analyzes Plaintiff's and class members' conversations to determine the likelihood they will buy a product or service from Defendant. Specifically, Drift creates a "CQL score" for each unsuspecting visitor based on the degree to which Drift's AI thinks (1) they are interested in buying

Defendant's product or service and (2) their goals can be accomplished with Defendant's product or service. Each unsuspecting visitor has their conversations analyzed in combination with numerous other attributes that Drift has collected about the visitor, including through 'Drift Intel.' Drift Intel is comprised of Salesforce record details, HubSpot record details (using the email address of the visitor or data collected using the HubSpot cookie), visitor's recently visited webpages, and the 'full activity timeline' of the visitor. This data is measured in tandem with every detail that Drift can collect about a visitors' chat conversation, including the full transcript of the conversation, the date and time the conversation began, the IP address of the visitor, the web browser they used to access the Website (Chrome, Firefox, etc.), the device they used to have the chat conversation (iPhone 14, Microsoft Surface Pro, etc.), and which words in the visitor's conversation triggered Drift's software to route the visitor to a particular person or 'bot playbook.' Drift then creates an audit log to explain why the software analyzed the visitor in a particular way and creates 'tags' to label and organize the visitor's conversation with other unsuspecting visitors' conversations." Compl. ¶ 19.

"Drift [also] utilizes a number of cookies to record a Website visitor's activity during and after the visitor's chat sessions with Defendant and to link to a current chat the transcripts of previously intercepted chats between the visitor and [Tonal]." Compl. ¶ 20.

Similar arguments were made in *Balletto*, 2023 WL 7026931, at *2; *Yockey v. Salesforce, Inc.*, 688 F.Supp.3d 962, 973 (N.D. Cal. 2023); and *Rodriguez*, 2024 WL 1223485. The Court agrees with those cases and finds that Plaintiff has not adequately alleged that Drift has the capability of using the chat data for its own purposes and benefit. Plaintiff's first allegation that chat conversations are first routed through Drift's server enabling Drift to "analyze, interpret, and collect customer-support agent interactions in real time to create live transcripts of communications as they occur," only supports the inference that Drift receives and stores communications for the benefit of its client, Tonal. *See Yockey*, 688 F.Supp.3d at 973 (finding that similar allegations "do not support a reasonable inference that [the software company] has the capability to use these communications for any purpose other than furnishing them to [its client]. [The] [c]hat, as alleged, is therefore more akin to the tape recorder in *Rogers*, and [the plaintiff] have thus

11

failed to state a claim pursuant to Section 631."). Plaintiff's second allegation that Drift "analyzes, stores, and uses for its own purposes," chat communications is conclusory and is not supported by the quoted information immediately following this allegation in the complaint. In the next sentence in the complaint, Plaintiff alleges that Drift does not allow conversations to be deleted because Drift doesn't want to lose any activity with your contacts and utilizes conversation statuses to help organize chats further supports the inference that Drift is more akin to the tape recorder in *Rogers*. Plaintiff's third allegation is also conclusory. Further, Drift's analysis of chat communications for Tonal's purpose as described in the complaint is akin to the tape recorder in *Rogers*. As in *Rodriguez*, Plaintiff's allegations failed to adequately allege that Drift violated the second prong of CIPA section 631(a).

Further, as Defendant argues, "Plaintiff alleges no facts in support of the allegation of "aiding and abetting" other than the existence of a third-party vendor." ECF No. 14-1 at 6. The Court agrees. The complaint "only supports the inference that [the vendor] receives and stores these communications for the benefit of its client, the Defendant." *See Rodriguez*, 2024 WL 1223485 at *13. "Plaintiff must provide facts suggesting that [third-party vendors] are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant." *Cody*, 658 F.Supp.3d at 782.

### b. Sufficiency of Plaintiff's Interception Allegation

Although, the Court has already found that Plaintiff failed to adequately allege the second prong of Section 631(a), the Court will also address Defendant's argument regarding the sufficiency of Plaintiff's interception allegation. The section prong of section 631(a) applies to communications intercepted "while . . . *in transit* or passing over any wire, line, or cable, or . . . being sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Tonal argues that CIPA's "in transit" language presents, and that Plaintiff has failed to meet, a pleading requirement which is narrowly defined to cover communications "acquired during transmission, *not* while … in electronic

storage." ECF No. 14-1 at 10-12 (emphasis added). This requirement derives from the Ninth Circuit's interpretation of the federal wiretap statute. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002). District courts in this Circuit have found it appropriate to apply an identical standard to interception claims in the CIPA context. *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 n.9 (C.D. Cal. 2017) ("Courts have generally construed [CIPA] as coextensive with the Wiretap Act.").

The standard articulated by the Ninth Circuit in *Konop* precludes interception claims with respect to communications accessed when the communications are "in electronic storage." *Konop*, 302 F.3d at 877. To be liable, a defendant must have "read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1136 (E.D. Cal. 2021). Stated differently, "once a [communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1077-1078 (N.D. Cal. 2015).

As alleged by Plaintiff, "Drift runs the chat service from its own servers," and the Drift API "directs [chat] communications to be routed directly to Drift." Compl. ¶ 16. While the Court is mindful of Rule 8(a)'s liberal pleading requirements, the complaint lacks allegations that Drift "halt[ed] the transmission of the messages to their intended recipients," *Bunnell v. Motion Picture Ass'n of America*, 567 F.Supp.2d 1148, 1154 (C.D. Cal. 2011), rather than, as Tonal argues, that transcripts are retrieved and created after transmission from "the server provided for Tonal's benefit by Tonal's software service provider." ECF No. 14-1 at 11. The Complaint contains averments that customer chats were "intercepted in real time" (Compl. ¶ 19), but these amount to conclusory statements below the *Twombly* and *Iqbal* plausibility threshold. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the software company] is intercepting the data in transit.").

The *Konop* Court acknowledged that this definition of interception considerably curtailed the availability of certain claims regarding email and other text-based electronic communications. 302 F.3d at 878, n.6; *see also Id.* at 874 ("The existing statutory framework is ill-suited to address modern forms of communication."). Yet it remains the case that "Plaintiffs do not sufficiently allege *how* the messages were intercepted, and thereby do not provide fair notice to Defendant of their alleged violation." *Licea v. American Eagle Outfitters, Inc.*, 659 F.Supp.3d 1072, 1085 (C.D. Cal. 2023) (emphasis added). For this reason as well, Plaintiff's claim under the second prong must be **DISMISSED**.

### c. Whether Plaintiff Sufficiently Alleges "Contents"

Tonal further argues that Plaintiff has not alleged with sufficient specificity that she entered "contents" into Drift's chat feature, and that this too constitutes independent grounds for dismissal of her claims under the second prong of section 631(a). ECF No. 14-1 at 12-13.

Under Ninth Circuit precedent interpreting the federal wiretap statute, 18 U.S.C. § 2510, "contents" "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Courts have applied the same "contents" standard to section 631(a) of CIPA. *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 127 (N.D. Cal. 2020). While *Zynga* does "not hold that certain types of information are unprotected in all contexts," *In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS-KES, 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017), Plaintiff must at a minimum demonstrate "that the contents were not record information, such as her name and address." *Byars v. Goodyear Tire and Rubber Co.*, 654 F.Supp.3d 1020, 1027 (C.D. Cal. 2023).

Courts in this Circuit have dismissed CIPA plaintiffs presenting similar facts for not sufficiently alleging intercepted "contents." *See, e.g. Graham*, 533 F.Supp.3d at 833 (dismissing complaint to the extent that it alleged "non-content information," including "IP

addresses, locations, browser types, and operating systems"); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082 (C.D. Cal. 2021) ("Taken together, this body of caselaw suggests that CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not.");[4] *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816 at *14 (N.D. Cal. Feb. 2, 2021) (data on when, how often, and for how long a user opened certain apps on his smartphone constituted record information and could not support a CIPA claim). Cases holding that non-text information generated by CIPA plaintiffs constitutes intercepted "contents" have chiefly focused on "session replay" technologies, which capture video of the user's entire session. *See, e.g.*, *Saleh*, 562 F.Supp.3d at 517-518.

The complaint's allegations concerning the substance of Plaintiff's Drift chat messages are limited to the assertion that she "engaged with the 'chat' feature of the Website to communicate with Defendant." Compl. ¶ 25. She further lists information the Drift software can record, "including the full transcript of the conversation, the date and time the conversation began, the IP address of the visitor, the web browser they used to access the Website (Chrome, Firefox, etc.), [and] the device they used to have the chat conversation." *Id.* ¶ 19. She outlines how Drift can or may tag and organize users' conversations and route visitors to customer service agents or "bot playbook[s]," and how Drift uses cookies to track website visitor activity. *Id.* ¶¶ 19-20. Taking all of the above as true, Plaintiff has not met her burden to demonstrate that her "engage[ment]" with the chat feature contained more than record information. For this reason as well, Plaintiff's claim under the second prong must be **DISMISSED**.

### 2. Third Prong – Use

The third prong of section 631(a) provides that it is punishable by fine or imprisonment for "any person … who uses, or attempts to use, in any manner, or for any

---

[4] Specifically, the *Yoon* Court held that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device," were not "contents" within the meaning of the statute. *Id.*

purpose, or to communicate in any way, any information so obtained[.]" Cal. Penal Code § 631(a).

In her opposition, Plaintiff alleges that Drift violated the third prong of section 631(a) by "harvest[ing] chat transcripts, which are then used by Drift for its own business purposes," and refers to paragraphs 18, 22-23 of the complaint to support the allegation. ECF No. 24 at 4. However, these paragraphs do not support Plaintiff's argument. In paragraph 18, Plaintiff makes a conclusory statement that "Drift boasts that it harvests data from the chat transcripts it intercepts … for a variety of its own purposes." Compl. ¶ 18. Plaintiff then supports that statement by quoting from Drift's website, stating, "Drift does not allow conversations to be deleted. This is because Drift doesn't want to lose any activity with your contacts and/or leads. Instead of deleting conversations, Drift utilizes Conversation Statuses to help organize your chats." *Id*. at ¶ 18. This quote from Drift's website contradicts the conclusory statement that Drift uses the chat conversations for its own purposes. In fact, it supports Defendant's argument that Drift stores the information for Tonal's future use. Further, in paragraph 22, Plaintiff states, "Drift's exploitation, modernization, use of, and interaction with the data it gathers through the chat feature in real time makes it more than a mere 'extension' of Defendant." *Id*. at ¶ 22. In paragraph 23, Plaintiff makes several conclusory statements about visitors to the website's chat feature, "[v]isitors would also be shocked to learn that Defendant allows a third party to interpret, analyze, and also use these intercepted conversations for that third party's own uses and business purposes." *Id*. at ¶ 23. These are all conclusory statements and does not actually allege how Drift uses chat transcripts for its own business purposes.

Further, a finding of a violation of prong three is contingent upon a finding of a violation of either prong one or two. *Rodriguez*, 2024 WL 1223485, at *14 (citing *Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023). Because Plaintiff failed to adequately plead a violation of the second prong, she has also failed to adequately plead a violation of the third prong. Accordingly, Plaintiff's claim under the third prong is **DISMISSED**.

**B. California Invasion of Privacy Act Section 632.7 Claim**

Section 632.7(a) prohibits the interception or recording of communications between two phones:

> Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine …, or by imprisonment in a county jail …"

Cal. Penal Code § 632.7(a).

Defendant argues that section 632.7(a)'s plain language "unambiguously limits its reach to communications between various types of telephones … [and] Plaintiff has not alleged a conversation between two telephones." ECF No. 14-1 at 21 (quotation marks and citation omitted). Further, Defendant argues that Plaintiff did not allege that she used her smart phone as a phone and that Plaintiff did not adequately allege that Tonal received and recorded the communications using a cellular radio, cordless, or landline telephone on its end. ECF No. 14-1 at 21. In addition, Defendant argues that Plaintiff "offers only a stretch allegation repeatedly rejected by Courts that any communication over the internet is a 'phone conversation,'" as a "plain reading of [section 632.7(a)] makes clear that the statute only applies to communications transmitted by telephone, not internet." ECF No. 14-1 at 21.

Plaintiff argues that the Central District of California has held that both federal and state courts have characterized section 632.7 as prohibiting the "intentional recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless telephone." ECF No. 24 at 14 (quotation marks and citation omitted). Second, Plaintiff argues that the Court should broadly construe the term, "landline telephone," in section 632.7 as encompassing Defendant's computer equipment, which connected with Plaintiff's smartphone to transmit and receive Plaintiff's chat

17

communications. *Id*. at 15. Third, Plaintiff argues that section 632.7 broadly defines the term "communication," as "includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile." *Id*. at 16. Fourth, Plaintiff argues that it is beyond dispute that "[t]he internet works through a series of networks that connect devices around the world through telephone lines." *Id*. at 17. Fifth, Plaintiff argues that section 632.7 should be read to establish broad privacy protections. *Id*. at 17. The Court finds that Plaintiff's arguments are without merit. California district courts have repeatedly addressed this issue with near unanimity.

In *Rodriguez*, the Court conducted an in-depth analysis of the overwhelming majority of district courts addressing this issue. *Rodriguez*, 2024 WL 1223485, at *15-17. The Court agrees with and repeats that analysis here.

The overwhelming majority of district courts addressing this issue have held that section 632.7(a) applies only to communications between two telephones and not to the internet chat communications at issue here, even when the Plaintiff accessed the internet via her smartphone. *See Cody v. Ring LLC*, No. 23-cv-00562-AMO, 2024 WL 735667, at *7 (N.D. Cal. Feb. 22, 2024) ("The fact that she used a smart phone to access the internet does not fit within Section 632.7's statutory reach."); *Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRx, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) ("[S]mart phones do not fall within the scope of the five categories of Section 632.7.") *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969, 983 (C.D. Cal. Aug. 14, 2023) ("[R]eading [section 632.7] so broadly as to encompass web-based messages sent from the internet browser of a smart phone to another party not using a phone at all would completely divorce [the statute] from its clear limits. The Court need not decide the exact contours of what text-based communications Section 632.7 covers; the statute is limited to communications between two phones, and the allegations here do not fit that category."); *Licea v. Vitacost.com, Inc.*, 683 F.Supp.3d 1118, 1124 (S.D. Cal. July 24, 2023) ("Plaintiff's use of his smartphone—not to make a phone call, but rather to engage the chat feature of Defendant's website—… places Plaintiff's own device outside the scope of a 'cellular

radio telephone.'"); *Valenzuela v. Keurig Green Moutain, Inc.*, 674 F. Supp. 3d 751, 760 ("[Section] 632.7 unambiguously limits its reach to communications between various types of telephones."); *Licea*, 659 F. Supp. 3d at 1112 ("The Court determines that section 632.7 only applies to the five types of calls enumerated …"); *Hot Topic, Inc.*, 656 F. Supp. 3d at 1069 ("The unambiguous meaning of the statute is thus that it only applies to communications involving two telephones. Plaintiff's allegations all relate to text-based web communications regarding a chat feature on a website, which virtually by definition cannot involve two telephones."); *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL (S.D. Cal. Oct. 24, 2023) ("[S]martphones are not covered by Section 632.7."); *Garcia v. Build.com, inc.*, Case No. 22-cv-01985-DMS-KSC, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023) ("A plain reading of the text makes clear that the statute only applies to communications transmitted by telephone, not internet. Plaintiff seems to argue that Defendant's conduct violated Section 632.7 because Plaintiff's communications with Defendant through the website chat function on her smart phone amounted to 'communication … transmitted via telephony.' This stretches the statutory language too far."); *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *17 (E.D. Cal. Mar. 30, 2023) ("[T]he Court concludes that § 632.7 only applies to the five types of calls previously enumerated.").

The Court is persuaded by the reasoning of the overwhelming majority of California district courts, which have held that CIPA section 632.7 does not encompass web-based messages sent from the internet browser of a smartphone. Therefore, the Court declines to adopt Plaintiff's interpretation of the statute.

The only two cases extending the meaning of the statute to the present circumstances, both written by the same judge, found that only one party needs to be using a telephone to bring a communication within the purview of section 632.7. *See Old Navy, LLC*, 669 F.Supp.3d at 947; *Goodyear Tire & Rubber Co.*, 654 F.Supp.3d at 1027-28. However, this finding is based on dicta in the California Supreme Court's decision in *Flanagan*, which addressed the meaning of "confidential communication," not at issue

here. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774-76 (2002). Further, the district court's finding that smartphones fall within the cellular phone category is also unsupported. *See Old Navy, LLC*, 669 F. Supp. 3d at 947; *Goodyear Tire & Rubber Co.*, 654 F.Supp.3d at 1027-28. As stated above, smartphones "are, in reality, small computers." *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135 (E.D. Cal. 2021). Thus, even if only one phone need be involved, CIPA section 632.7 still does not apply to the present case. Therefore, the second cause of action is **DISMISSED with prejudice**.

### C. Claims Under California's Unfair Competition Law

The Defendant further moves to dismiss Plaintiff's UCL claims for lack of statutory standing. ECF No. 14-1 at 19-20. The UCL provides a private cause of action to "a person who has suffered injury in fact and has lost money or property as a result" of an unlawful, unfair or fraudulent business practice. Cal. Bus. & Prof. Code § 17204. California courts have read § 17204 to require *both* injury in fact and the loss of money or property. *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 320-324 (2011). An injury in fact will not suffice for statutory standing if it is not economic in nature.

The parameters for economic injury are expansive and California courts have not undertaken to define them exhaustively. Economic injury may at least be demonstrated when a plaintiff "(1) surrender[s] in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) [has] a present or future property interest diminished; (3) [is] deprived of money or property to which he or she has a cognizable claim; or (4) [is] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 323."

The Plaintiff here locates an economic injury in the Defendant's alleged allowing, aiding, or abetting Drift in "exploit[ing]" chat feature conversation transcripts and information for financial gain. Compl. ¶ 29. She says "the economic value of Plaintiff's and Class Members' data to them is inherent" in the fact that the data can be harvested and analyzed for Defendant's and third parties' financial benefit. ECF No. 24 at 18. However, courts in this Circuit have not extrapolated from the fact that a user's data has economic

value *to someone* that its collection constitutes an economic loss to the user. *See, e.g.*, *Greenley v. Kochava*, 684 F.Supp.3d 1024, 1054 (S.D. Cal. 2023) ("The relevant inquiry is not whether Defendants can profit from Plaintiff's personal information, but whether Plaintiff himself can profit from his own data."); *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1040 ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.").  Because Plaintiff's allegations do not suffice for standing under the UCL, the UCL claims are **DISMISSED with prejudice**. Because Plaintiff lacks standing for her UCL claims, it is not necessary at this stage to rule on Tonal's other arguments that she lacks any predicate claim for the UCL's unlawful or unfair prongs. ECF No. 14-1 at 21-22.

## D. Constitutional Invasion of Privacy Claims

Plaintiff's fourth claim alleges violations of her state constitutional right to privacy. Article I, Section 1 of the California Constitution enumerates a non-exhaustive list of "inalienable rights," to which California voters added "privacy" via a 1972 ballot measure. [5] The privacy clause has been held to cover private, non-governmental actors. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 16 (1994). The California Constitution sets a "high bar" for establishing an invasion of privacy claim. *See Belluomini v. Citigroup, Inc.,* No. CV 13–01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).

The Supreme Court of California has derived three elements plaintiffs must plead for invasion of privacy claims. *Id.* at 35-38. These are (1) "a specific, legally protected privacy interest," (2) "a reasonable expectation of privacy on plaintiff's part," and (3) an invasion "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* The first element is a question of law to be decided by the court, while the latter two elements are mixed questions of law and fact. *Id.* at 40. "A defendant may prevail in a state

---

[5] The section reads in full, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

constitutional privacy case by negating any of the three elements . . . or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." *Id.*

As other courts have observed, the threshold elements of *Hill* are "not a categorical test." *In re Google Location History Litig.*, 428 F.Supp.3d 185, 196 (N.D. Cal. 2019). The existence of a privacy interest is rarely considered in isolation from the context that molds the plaintiff's expectations and the defendant's purportedly intrusive conduct. California Supreme Court precedent confirms that "[T]he specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis." *Loder v. City of Glendale*, 14 Cal. 4th 846, 890 (1997).

The first element under *Hill* addresses whether Plaintiff has a legally protected privacy interest in the communications she undertook using Tonal's chat feature. *Hill* outlined two generally recognized kinds of legally protected privacy interests: "(1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." 7 Cal. 4th at 35. The first interest in informational privacy is the most obviously relevant to this case, and courts addressing whether CIPA plaintiffs have a privacy interest in various internet communications have considered the issue under this banner. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1039 (N.D. Cal. 2014).

Tonal argues first that "Generally, there is no legally protected privacy interest in internet communications with a website." ECF No. 14-1 at 16. This statement is overbroad. In a field as broad as web-based communications, at least *some* privacy interests exist for at least some classes of plaintiffs. *See In re Yahoo Mail Litig.*, 7 F.Supp.3d at 1041 ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed[.]"). *See, e.g., Mintz v. Mark Bartelstein & Associates Inc.,* 906 F.Supp.2d 1017, 1033–34 (C.D. Cal. 2012) (finding legally protected privacy interest in the personal financial and employment information contained in an email account).

However, it is clear enough that courts hearing information privacy cases focus both on the nature of the stored information and the way it is used. *See In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 817 (N.D. Cal. 2020) ("[T]here is no legally protected privacy interest and reasonable expectation of privacy in electronic messages, in general. Rather, a privacy interest can exist, if at all, only with respect to the content of those communications.") (internal citation and quotations omitted).

Further, and in contrast to Plaintiff's arguments in her opposition brief, courts have found it appropriate to rule on the plausibility of constitutional informational privacy claims at the motion to dismiss stage. "Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40; *see also Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1140 (E.D. Cal. 2021) (When addressing whether an alleged invasion of privacy "constitute[s] an egregious breach of the social norms underlying the privacy right … one important factor that courts often rely on is whether the plaintiff alleges that the defendant used the private or confidential information obtained for some improper purpose."); *see also In re Yahoo Mail Litig.*, 7 F.Supp.3d at 1040. ("To the extent Plaintiffs claim a legally protected privacy interest and reasonable expectation of privacy in email generally based on the mere fact that Yahoo intercepted and distributed their emails, regardless of the specific content in the emails, Plaintiffs' claim fails as a matter of law.").

"A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill* at 35. Plaintiff makes conclusory allegations in the complaint. Plaintiff's allegations lack the requisite specificity to indicate the existence of a legally protected privacy interest or a sufficiently serious breach thereof.

Defendant's arguments on this are persuasive and sufficient to foreclose Plaintiff's constitutional claim at the motion-to-dismiss stage. Plaintiff has made only sparing references to the nature of the communications. Her opposition brief points to two paragraphs in her Complaint, paragraphs 15 and 24. ECF No. 24 at 20, *c.f.* ECF No. 1-2. Paragraph 15 only alludes to the possibility that chat feature conversations could be "private and deeply personal."[6] Paragraph 24 cites to a recent study by the Electronic Privacy Information Center and does not address the content of the chat feature conversations alleged to be involved in this case. There is no supporting allegation that Plaintiff's engagement with the Drift chat feature conversations produced or transferred content likely to be embarrassing. Plaintiff's allegations fail to allege an egregious breach of social norms. Thus, Plaintiff's claims for violation of the California Constitution's right to privacy provision is **DISMISSED**.

### E. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**. As stated above, Plaintiff's claim against Defendant for liability under CIPA section 632.7 is **DISMISSED with prejudice**. Likewise, Plaintiff's UCL claim against Defendant for liability under the UCL is **DISMISSED with prejudice**. All remaining claims are **DISMISSED without prejudice.** Should Plaintiff decide to file an amended complaint, she must do so within 21 days of this order. If Plaintiff fails to file a timely amended complaint, the Court will close the case.

/ / /

/ / /

/ / /

/ / /

---

[6] That paragraph, in full, reads: "To enable the wiretapping, Defendant has covertly embedded a third-party's code into its chat feature that automatically records and creates transcripts of all such conversations. To enable the eavesdropping, Defendant allows at least one independent Third Party (on information and belief, "Drift") to secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use for that Third-Party's own purposes transcripts of Defendant's chat communications with unsuspecting website visitors - even when such conversations are private and deeply personal."

1

**IT IS SO ORDERED**.

2

Dated:  September 30, 2024

3

4

Honorable James E. Simmons Jr.
United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28